Joe Baker v. Joe Baker Is your opponent here, sir? I'm surprised. Apparently not. Have you seen him this morning? No, Your Honor, I haven't. Did he check in? He did, huh? Maybe he thought better of it. I'll check in the hall. Pardon? No, I'll wait. I'll wait and check to see if he's out there. Welcome from the handle of Texas. We're glad to have you. It's our first time here. Thank you. Yeah. Did you find him? The lawyer is not here. Okay. I guess she's looking, yeah. Yeah, she's looking. You get a little more nerves out of the way? She didn't go to the men's room. Just disappeared. Okay, he's nowhere to be found. Go ahead. Limitations of that power for the bankruptcy court. This case began with my client on the horns of a dilemma. He had an obviously fraudulent and false warranty deed executed by the debtor's ex-spouse in direct contradiction to the divorce decree arising out of the State District Court. At the same time, my client had purchased what he was told in the bankruptcy court orders would be unfettered mineral and surface interest. So, what do we do? Let me ask you a question. Yes. Is your client litigating this divorce decree, and whether it was right or wrong, I mean, whether it captured the deal or not, is your client litigating that now in state court? Yes, Your Honor. The motion to compel in the bankruptcy court was filed just a little bit before the motion to compel in the State District Court. Not knowing which court was the best place to resolve the issue, we filed them both. That matter is actually waiting. It hasn't been officially stated. It's actually waiting while we proceed in this court. Now, so, as I read what your bottom line here is, what you really want, is you want a declaration by some court on the federal side that the question that you're litigating in the state court was not decided by the federal court. We would be comfortable with that. Although we believe that both the bankruptcy court and the district court wrongly decided under any standard that the divorce decree contravened the saving of the mineral interest into Joan Baker, I just, I don't see how anyone could not look at that divorce decree in its plain terms. Well, I don't see where here this court, I mean the bankruptcy court, I don't see where that issue ever got decided. I mean, the court here decided, basically, was called upon to interpret its own order, which it has jurisdiction to do. I love your jurisdictional arguments, and there are some judges on this court who would love to weigh in on that. But, basically, all this court was ever asked to do was to construe its own order, which it did, which is wholly apart from whatever that divorce decree provided or should have provided and didn't. If only the bankruptcy court had limited itself in such a fashion. Well, where in here do you say that it did more than that? I mean, that's all it was asked to do at this stage in this proceeding. Well, as we state both in our brief to the state district court in our brief here, similar to some of the other cases, we feel like we improvidently invited the bankruptcy court to delve into the merits of the state district plan. But what it looks to me like the district court said that was not decided, and don't we look at the district court's judgment? Well, the district court did say that it read the bankruptcy court not to have delved into that. But when you look at the district court's opinion at page 9, 18, 19, and 20, it actually says it goes into the merits. Now, it's okay under the recent case of, and that's what I wanted to discuss today, the implications of the executive insurance benefits agency case versus Arkeson, which was decided in June. That case was decided after Judge O'Connor and the district court made his decision. That court changes the playing field, and it impacts directly what Judge O'Connor did. Judge O'Connor applied the wrong standard of review. He plainly states it throughout his opinion that he's applying the clearly erroneous standard to findings of fact and no vote of conclusions of law. Well, EIB changes the playing field on that. EIB says if you have a stern – first of all, EIB assumed that there was a stern problem. It didn't get into the merits of that. But assuming that you have a stern problem, the executive benefits case, that's the Arkeson case, the Supreme Court said in such a time, such a case, the bankruptcy court shall enter proposed findings of fact and conclusions of law, which this court did not and which we complained about at the bankruptcy court level and at the district court level. It says shall enter proposed findings of fact and conclusions of law, and then the district court looks at those under a trial de novo standard of review, both on the facts and the law. So, understandably, Judge O'Connor got it wrong because EIB – executive benefits hadn't been decided yet. The case was literally fresh off the press when we filed our notice of appeal and went forward with our appeal. So here's what we feel should happen. Yes, we believe that the bankruptcy court had poor jurisdiction. Just look at the simple issue of was its bankruptcy orders followed. We don't dispute that. However, both in its original order denying our motion to compel and also in its later order denying our motion to reconsider, it went further. It definitely went further and said that based on a couple of things, based on this motion by the intervener to have the bankruptcy court approve the erroneous and unlawful warranty deeds by Joan Baker, that based on that and the district court said the findings of fact in the lower court, based on those two things, the court was going to find that no error had been committed. So, there is a consent issue. This court has written on the consent issue, I think, three or four times, phrased it, discussed it. If this court were to write that we construe the district court judgment and opinion, notwithstanding what it may have said at some point, it's not deciding the issue of what the deed actually conveyed. In other words, if we construe the district court as saying whatever the estate owned at the time the deed was signed is what the estate conveyed and we leave it to the state court to determine what the debtor owned at that point in time, where does that leave us? What more would this court need to do? Retrospect, we would be super happy with that. Yeah, I bet he would. He'd be wagging your tail. Yeah, we'd be happy with that. What does that do to the intervener's argument that I've got a deed from Joan Baker and it's conveying the minerals? Where does that leave that? Well, I would ask that the court take a fresh look at this so-called motion to approve the divorce deed of Joan Baker and notice that in the certificate of service, the only parties that are noticed are the trustee and the debtor. This is by an attorney that at that time and to this date never entered an appearance in the ECF system, never signed up for the ECF system. So my complaint is how can you – how can just a simple blessing by the bankruptcy court on those divorce decree deeds without a true adjudication with discovery and an opportunity to be heard, how can that be binding? But yeah, like we said in our brief to this court, if this court decides that the bankruptcy court never entered into that issue and that issue is preserved for the state district court, we'll say – We don't have the authority to go back and revisit the reorganization orders, the Chapter 12 orders. All we have the authority to do at this point is to look at what happened on this final round here. Yes, Your Honor. Okay. And let's look at the status of the case today, and this is in our brief too. Who's here? The debtor isn't here. The debtor isn't here because we settled with the debtor. We settled with him according to an order in the bankruptcy court that asked for continuing orders, more definite orders. We signed those. We presented those to the district judge, and he said he didn't have the jurisdiction to consider them. So all we have is – and this goes to why this is a non-core issue. All we have is my client, a creditor, a winning bidder, and we have this intervener. What's the intervener trying to do? He's trying to bootstrap – he's trying to get an adjudication from the bankruptcy court without an opponent, without a real adversary proceeding. He's trying to bootstrap that to prove an obviously flawed and wrongful divorce decree. I mean not divorce decree, the deeds that were signed in contravention of that divorce decree. Now, I wanted to save five minutes for rebuttal. Am I into the rebuttal? You've got five minutes. You'll have five minutes when your time's up here, yeah. Does the court have any questions about the effect of the executive benefits case or phrasing on this case? I don't think the executive benefits case is involved in this case, period, end of issue. This court, this bankruptcy court, was called upon to construe its prior order. And I think you're a very engaging lawyer, and the one thing that you can sure do to throw sand into the machinery is start talking about executive benefits. But all this court was asked to do was to – all it had the jurisdiction to do, because the case was over, was to construe its earlier order, which it had very narrow jurisdiction to do. So, you know, I don't think executive benefits is in this case at all. This is a reorganization that was consummated a while back, and it's over with. The bankruptcy court no longer has jurisdiction except to simply say, you've asked what my prior order meant and said, and here's what it said, and it has the authority to do that, and that's it. If only it had stopped there. But at our invitation, I'll admit it, it went further. In its order denying our motion to compel and also on its order denying our motion to reconsider, it clearly makes a determination on the merits of the state court action. And, you know, if they had filed findings of fact, conclusions of law, it would have made it easier for us to deal with that at the district level. It would have made it easier actually to go back to the bankruptcy court and say, you know, what does all this mean? But it didn't do that. So I would just ask the court to take a fresh look at those two orders by the bankruptcy court and see whether or not it did go into the merits of the issue. OK, thank you very much. Thank you. OK, Mr. Neal. Did you get lost this morning? I was directed to the wrong place, Your Honor, but it's my fault. I should have checked. I knew which panel it was, so I should have been here. I apologize. OK. Go ahead. Plenty to please the court. My name is Ron Yandell, and I represent the Charles Hamill Jeffrey Trust, which is a party of interest in Annapolis here. My involvement in this case began more than four years ago when I was asked to file a motion to lift state to allow Joan Baker, as she was known at the time, to go forward with a divorce case, which was pending in Millburn County, Texas. The motion was filed. The court granted it, and the state district court then entered a divorce decree, which, pursuant to the court ruling, was brought back to the bankruptcy court for approval so as to allow the court the opportunity to determine that that divorce decree was revenue neutral with respect to the creditors. The court made that determination and authorized the entry of the divorce decree and the deeds which were attached. This case could be said to be swinging on two words, and that's the surface. If the divorce decree had just said that Joan Baker is deprived of all right, title, and interest in the surface and then gone on to have the deeds created the way they were, then there wouldn't be any issue about the mineral interest that was or was not conveyed. But at any rate, Your Honor, that's ancient history. And what I mean by that is that under Texas Rule of Appellate Precision No. 29, the time for filing an appeal of a divorce in a state court ran out long before there was any question or any contest about it. It was a final appellate judgment, and to the extent that this appeal in this circuit is a collateral attack upon that final decree of divorce, it should mean that it was attached to the decree. Is that right? I'm sorry, Your Honor? The deed. Was it attached to the decree? The deeds were attached as exhibits to the decree. And the decree referred to the deed? The deed referred and the decree referred to the deeds. At the time that that decree was brought to the bankruptcy court for approval, neither the Jeffrey Trust nor Mr. John W. Baker, the appellate, were even involved. Mr. Baker didn't file his claim until about eight months later, didn't enter an appearance about it until about eight months later, and the Jeffrey Trust did not buy the minerals that had been reserved by those divorce court deeds, did not buy those minerals until December after the court approved of the decree and it was entered in February. So they were not even involved in that issue. But later on, after the sale and after Mr. John W. Baker had appeared in the case, the trust brought an issue to the court, the bankruptcy court, and said that there was a problem with some of the deeds that were being used to sell property and pointed out to the court that there was 54 more acres actually involved. And the court a second time considered and approved the language that was contained in the decree of divorce and the division of the property. Long after that, there was a bidding procedure established that provided for the sale of this Chapter 12 owner's plan. That paid 100% of all claims, including a $100,000 claim that was owed to the appellate by a late-file claim, which the bankruptcy court ultimately allowed. And all claims had been paid in full, the estate had been distributed, and as Judge King pointed out, the confirmation order basically said, everything's done and limited what the bankruptcy could do thereafter. When Mr. Baker brought a motion to compel, the suit was not even brought against the Jeffrey Trust. It was actually brought against the debtor, saying that the debtor should be required to do another deed so as to convey the minerals which had been reserved in the divorce book. There is some language, there's some interesting language that the appellate put before the bankruptcy court by way of an order on debtor's motion for attorney's fees in connection with the motion to compel, the debtor asked the bankruptcy court to award attorney's fees for that claim, which was denied, and the court entered an order on March 1st of 2013, and that order contains the following language. This order was drafted, by the way, by the attorney for the appellate. It says in that order in paragraph A that the debtor's estate agrees that it will not oppose John W. Baker's contention that his motion, referring to document 363, and any orders of this court do not adjudicate the issue of the mineral reservation contained in John Baker's special warranty deed to the deceased Joe Gale Baker. And arising out of the divorce decree entered on February 25th, 2011, in cause number 10485 before the 46th Judicial Court of Hardeman County, Texas. And then the key language. Since debtor and John W. Baker agree that the interest, or that the issue of the mineral reservation contained in John Baker's special warranty deed shall be determined by the state district court. In other words, both the debtor and the appellate agreed that it wasn't a bankruptcy issue at all, that it was an issue that should be determined by the state district court. The question is, why would they agree to that, or make that statement, but fail to proceed or to prevail in the state district court? And the answer is because it's a collateral attack on the final judgment. So... Of the state district court. I'm sorry? Of the state district court. Of the state district court, Your Honor, under Texas rule of appellate... That's a matter for the state district court to decide, not us. Right, right. They agreed that that was the proper form to decide it, but unfortunately the decision there was barred by Texas rule of appellate procedure. That's not for us to say. That is not for you to decide, no. But the point being is that long before it ever got here, the issue was agreed by the appellate and by the debtor that it should be determined by the state district court. Unfortunately for them, it's probably barred by the Texas rules. The court mentioned another case that Justice King does not feel has application and I would agree, and that is the employee benefits case, which was decided in June, just a couple of months after Judge O'Connor issued his opinion in this case. As a bankruptcy lawyer, though, there's part of that, it's a unanimous decision, and it concerns me about what is in fact and is not a stern claim and what power does the bankruptcy court to have, inherently have, to make which determination. Apparently, fraudulent transfer cases are stern claims and the Constitution prevents them from being considered. Does the same lack of constitutional jurisdiction or power, does it apply to things where the bankruptcy court sends a divorce to be heard and then approves of it when it comes back? I know that it shouldn't, I don't feel that it ever will, but that question seems to be out there. Well, but it's not in this case. I'm sorry? I don't see that it's in this case. Well. Why is it in this case? All of the stuff that's really at issue here, the damage that was done according to your opposing counsel, long is over with. I agree, but my point being is that one of the issues taken up in the benefits case was that can parties, by agreement, confer jurisdiction under 157? And the Supreme Court in footnote four clearly said that we're reserving that issue. I know, and that's coming up this year. Yeah. So that's all right. That's on the Supreme Court's agenda this year, but I don't, you know. Well, I'm only suggesting that if, in fact, there's ever a case where the parties agreed to a jurisdiction or agreed to a trial of what might otherwise be a stern claim, it was in this case because the appellant filed a claim in the estate. The appellant filed a motion to compel. He invoked the bankruptcy court jurisdiction. And so I don't, I know that Judge O'Connor actually redrafted his opinion to eliminate what he called dicta, saying that they could agree because he realized that was under consideration. But I just am concerned that there will ever be a time when the court will ever rule that you can't. You can't confer jurisdiction. Well, that's all going to be decided this year, so we'll see. All right. My point being is that that's one of my concerns about the way that that case, and it's a 9-0 decision, so it's very much at issue. Another thing is, Your Honor, is the question of waiver under Texas law. By the bankruptcy court establishing a procedure for selling property, which should be clearly under its jurisdiction under 157-N-0, by establishing that procedure, the court provided for an orderly and a mannerly sale of the assets to pay the creditors of the estate, which is exactly what bankruptcy is supposed to do. So by doing so, it should have the inherent power of any court to enforce and determine its own orders later on, which is exactly what the bankruptcy court did when it considered the motion to compel. It said that it had, in fact, that the orders provided for the conveyance of all the debtor-owned, not all of the interest that was out there, but only what the debtor-owned. And that sale went through. Mr. Baker was handed a title opinion, which said that the minerals were reserved. He was represented by counsel at the time, and when the order of sale was presented, he was served with it. And only after he received payment of $100,000 on his claim did he bring the motion to compel. So he should have been considered to waive that, which in Texas law is the orderly and knowing surrendering of a known right. He should not be heard now to say that I should get more because I didn't waive, if you will, my rights when the sale came down. He says I did not look at the title opinion. He did not realize that it did not convey the minerals until much later on when he brought the motion to compel. But if he's not bound by his own actions, what about the other buyers? What about the other tracts of land that were sold? Do they have the same right now to say that they should get the minerals as well, that they didn't get what they bargained for? None of them have brought that issue at all. None of them have even claimed it. They would be long barred from doing so. So as I understand it, this is a Chapter 12 that was 100% pay. All the creditors were paid. That is correct. Case over. Including the appellant. Big victory, case over. Case over. And then comes this. And then comes this. And I just didn't, I had no idea when I was asked to prepare and file a motion for lift of say that I was going to end up at the Fifth Circuit. I still can't believe I'm here. But I am. And so we would respectfully ask that the court deny and not require the, basically the reopening of a long dead Chapter 12 proceeding that paid out in full. Thank you, Your Honor. Thank you. Okay. Mr. Jones, you're going to handle rebuttal. Rebuttal. May it please the court. As Van Norden said earlier, I'm Brantley Jones. This is Professor Smith out of Amarillo, Texas. I have two points that I'd like to cover with the court. And then if there's any time remaining, I'll yield to that. First is this question about what the district court did or did not pass on. As we all know, the district court does, or I'm sorry, the bankruptcy court does have authority to enforce its own orders. In exercising that authority in this case, it actually reached into the question of whether or not the divorce decree conveyed Joan the minerals under this piece of land called Poppies. It does that, and it's reflected in the district court's opinion three or four times. They say that because the bankruptcy court order of sale said that the conveyance was all of debtors' interest in Poppies, and because Joan had reserved the mineral interest, those interests did not include debtors' interest. So they had to reach into what is effectively the issue at the state court right now, and that is whether or not the divorce decree had actually effectively reserved the mineral rights in Joan. Under Texas law, it didn't. The divorce decree has a provision in it that says something along the lines of, oh, it's a general grant of Poppies to Joe Baker. It also has these warranty deeds attached to it. The general grant of that property under the greatest estate rule would have vested everything, surface and mineral, in Joe. Right underneath the grants of property, the divorce decree actually states that it's an union of title, and so it's effective under Texas law to convey the equitable interest in that property to Joe Baker. As stated in the divorce decree, the execution and recordation of the attached warranty deed later would have only, well, it creates a cloud on the title, but it only confuses the issue, and it doesn't actually effectively reserve those interests in Joan. Anyway, that's all beside the point. It's going to get litigated in the state court. The point is that that was the appropriate legal determination to make, but what the court did was make the legal determination that the reservation was effective, and that was beyond what it had to do in order to enforce its orders, which is just to say this warranty deed is sufficient in comparison to my order of sale, and that's not what it did. It reached the actual issue of who owned the minerals under the divorce decree. On to the second issue of waiver, the appellant has pointed to this title commitment in all three courts now, the bankruptcy court, the district court, and this court, to say that we had knowingly relinquished our right to the mineral interests. However, that title commitment was only a commitment between the title company and Joe Baker as to what would be insured by that company, and it wasn't an acknowledgment that the title company could, or by accepting that insurance policy that he was going to relinquish his claim to that title. It's just that he wasn't expecting them to defend him in any subsequent actions by somebody claiming under that. And with that, I would respectfully request that the court reverse the lower courts in this case and allow this to proceed appropriately in this date court. All right. Thank you. Thank you, gentlemen. We'll stand in recess for 10 or 15 minutes before we take up the next case.